BRIAN J. STRETCH (CSBN 163973)
Acting United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Acting Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
ROBERT DAVID REES (CSBN 229441)
Assistant United States Attorneys

    450 Golden Gate Avenue
    San Francisco, CA 94103
    Telephone:  (415) 436-6959/7210
    Fax:  (415) 436-7234
    E-mail:   William.Frentzen@usdoj.gov
               Robert.Rees@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>DENNIS CYRUS, JR.,<br><br>      Defendant. | No. CR 05 00324 MMC<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL**<br><br>Hearing:  November 19, 2010<br>Time: 1:30PM<br>Court:  Honorable Maxine M. Chesney |

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Information in Existence Prior to Trial in This Case Does Not Warrant a New Trial
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A. There Has No Been No *Brady* Violation. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      i. The United States Did Not Know of and Is Not Deemed to Have
Knowledge of Ms. Madden's Misdemeanor Convictions or the Lab's
Internal Audits nor Had Any Obligation to Learn of Them. . . . . . . 3

      ii. Even if the Prosecution Was Deemed to Have Knowledge of the
Information, it Had No Duty to Disclose it Because it Was Not
Material. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   B. The Defendant's Motion Squarely Qualifies as a Rule 33 Motion for a New
Trial Based on Newly Discovered Evidence, Which Must Fail. . . . . . . . 13

      i. The Defense Did Not Exercise Due Diligence. . . . . . . . . . . . . . . . . . 13

      ii. The Information Is Impeaching and Cumulative. . . . . . . . . . . . . . . 14

      iii. The Information Is Not Material to the Issues Involved. . . . . . . . . . 15

      iv. The Information Would Not Probably Result in an Acquittal. . . . . . 15

II. Information Post-Dating Trial in This Case Cannot Support a New Trial. . . . . . 16

III. Even If Ms. Madden's Testimony Were Deemed Totally Incredible, No Count of
Conviction Would Be Undermined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

BRIAN J. STRETCH (CSBN 163973)
Acting United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Acting Chief, Criminal Division

WILLIAM FRENTZEN (LABN 24421)
ROBERT DAVID REES (CSBN 229441)
Assistant United States Attorneys

    450 Golden Gate Avenue
    San Francisco, CA 94103
    Telephone: (415) 436-6959/7210
    Fax: (415) 436-7234
    E-mail:    William.Frentzen@usdoj.gov
               Robert.Rees@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 05 00324 MMC |
| Plaintiff, | ) | |
| v. | ) | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL** |
| DENNIS CYRUS, JR., | ) | |
| Defendant. | ) | Hearing: November 19, 2010 |
| | ) | Time: 1:30PM |
| | ) | Court: Honorable Maxine M. Chesney |

## INTRODUCTION

The government hereby opposes the motion by defendant Cyrus for a new trial.

The defendant states that the motion is based on a claim of newly discovered evidence

and *Brady* violations.  The defendant presents a number of bases for his new trial motion

that obscures the very different analyses the court must undertake depending upon the

type of evidence presented in support of the defendant's motion.

The defendant has presented two general categories of evidence essentially

interchangeably to support his motion:  (1) *information in existence before trial*, such as

evidence related to Deborah Madden's 2008 misdemeanor domestic violence convictions,

1   the San Francisco Police Department ("SFPD") reprimand that resulted, and internal

2   SFPD lab audits generated between 2006 and 2008; and (2) *information relating to events*

3   *occurring after trial concluded*, including admissions by Ms. Madden that she personally

4   used some powder cocaine at the lab in late 2009, small amounts of powder cocaine

5   found at her home in December 2009 corroborating those admissions, and post trial audits

6   of the SFPD crime lab.

7     Contrary to the defendant's implications, these two categories of evidence require

8   different analyses.  None of this information, however, merits a new trial or casts any

9   doubt whatsoever on any count of conviction in this case.

10     The United States was unaware of and had no legal duty to disclose Ms. Madden's

11   misdemeanor convictions, subsequent SFPD discipline, or internal SFPD audits.

12   Moreover, Ms. Madden's convictions were a matter of public record prior to trial, and all

13   preexisting SFPD related information was available to the defense via subpoena.  Thus,

14   all pretrial information was equally available to the defense.  In any event, the convictions

15   and subsequent discipline arising from Ms. Madden's throwing a phone at her partner

16   during a domestic dispute have no bearing whatsoever on her credibility, nor do the

17   internal pre-trial SFPD lab audits cast any doubt on the validity of the work done during

18   that time period.

19     Post-conviction information, such as the so-called SFPD lab scandal related to Ms.

20   Madden's theft and use of powder cocaine from the drug lab, has nothing whatsoever to

21   do with this case.  The issues related to Ms. Madden at the SFPD drug lab and the audits

22   performed in 2009 and 2010 occurred after all relevant events in this case, including

23   commission of the crimes, their investigation, and both guilt and punishment phase of the

24   trial, had fully concluded.  The defense has failed to point to any evidence that Ms.

25   Madden used or stole any cocaine from the SFPD lab until, at the earliest, late 2009, well

26   after trial concluded in July 2009.  The SFPD crime lab scandal may have had a relevant

27   impact on a number of criminal cases in San Francisco, but Cyrus's case is simply not one

28   of them.

Finally, the defense attempts to patch together Ms. Madden's 2008 misdemeanor convictions with her later, post-trial cocaine-related issues at the SFPD crime lab and assert that the sum is greater than the parts. This is no evidentiary basis whatsoever to connect these two events such that they should attain any kind of cumulative impact. Even if that were possible, Ms. Madden's role in the trial was so minor that if her testimony were entirely stricken, it would not call a single count of conviction into question. At worst, it would put into question the viability of mandatory minimum sentences on two drug counts, Counts Eleven and Twelve. The defendant's motion should be denied.

## ARGUMENT

### I. Information in Existence Prior to Trial in This Case Does Not Warrant a New Trial

The defendant claims that he is entitled to a new trial, in part, because testifying witness Ms. Madden suffered two misdemeanor convictions arising out of a domestic dispute wherein she threw a phone at her partner causing minor injury, and the resulting discipline imposed by SFPD, her employer. Additionally, the defendant claims to be entitled to a new trial because internal audits found room for improvement in the lab's workings prior to commencement of trial. The defendant asserts that the government should be deemed to have known about and turned over this information, but he has identified no statute, rule, or case that would require the government to know about or turn over this information. Even if the defendant had knowledge of the information prior to trial, it would not have been useful to him because it was neither admissible nor relevant.

### A. There Has No Been No *Brady* Violation

> *i. The United States Did Not Know of and Is Not Deemed to Have Knowledge of Ms. Madden's Misdemeanor Convictions or the Lab's Internal Audits nor Had Any Obligation to Learn of Them*

The defendant claims that his lack of knowledge of Ms. Madden's misdemeanor

convictions and 2006–2008 internal lab audits equates to a *Brady* violation by the prosecution.  He is incorrect.  Neither did the United States know about the convictions and resulting discipline or the audits, and it was not legally deemed to have knowledge of them, nor required to learn of them.

The undersigned prosecutors in this case were completely unaware of Ms. Madden's convictions and resulting discipline.  The prosecution ran "rap sheets" for all lay witnesses, but not for law enforcement personnel or for expert witnesses.  With respect to law enforcement witnesses, the United States offered to and did request and obtain information about likely testifying SFPD officers' potential misconduct, both internally at the SFPD and through the Office of Citizen's Complaints.  The United States also conducted *Giglio* and *Henthorn* inquiries for all testifying federal law enforcement agents.  *See, e.g., United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) (reaffirming "the procedure the prosecution must follow when confronted with a request by a defendant for the personnel files of testifying *officers*" (emphasis added)).  Indeed, between these efforts the prosecution disclosed hundreds of pages of potential impeachment material to the defense.

However, the prosecution did not request such information for civilian chemist expert witnesses such as Ms. Madden.[1]  Neither Rule 16, *Brady*, *Giglio*, *Henthorn*, nor any other case of which the government is aware requires the prosecution affirmatively to obtain criminal history records for expert witnesses who are not employees of the United States.

Similarly, the United States did not seek to obtain nor was aware of any of the contents of the 2006–2008 internal SFPD lab audits.  The United States complied fully with its Rule 16 obligations and provided all material related to the expert SFPD lab chemists, including providing their qualifications, a summary of their opinions, and the bases and reasons for them.  *See*  Fed. R. Crim. P. 16(a)(1)(G).  Neither Rule 16 nor any

---

[1] While Ms. Madden was employed by the SFPD, she was not a law enforcement officer, but rather a civilian employee of the drug lab.  The defense does not assert otherwise.

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

other rule, case, or statute cited by the defense requires the government to produce internal lab documents that do not bear any direct relation to the opinions being offered.

The defendant's primary fallacy is to presume that *Brady* imposes investigative burdens on the prosecution. The law is clear that it does not. *Brady* is, fundamentally, a doctrine of disclosure, not of affirmative investigation obligations on the government's part. Accordingly, "[i]f the record is conclusive that all relevant agents of the government did not know about the *Brady* material, then, of course, no *Brady* violation has occurred as the government has no obligation to produce information which it does not possess or of which it is unaware." *United States v. Price*, 566 F.3d 900, 910 n.11 (9th Cir. 2009) (internal quotation marks omitted).

Here, the defendant has not even asserted, much less provided any evidence, of actual knowledge by the prosecution team of Ms. Madden's misdemeanor convictions, resulting discipline, or the internal audits. Nor could he. *See, e.g., id.* ("The proponent of a *Brady* claim—i.e., the defendant—bears the initial burden of producing some evidence to support an inference that the government possessed or knew about material favorable to the defense and failed to disclose it.").

There are, of course, situations in which the prosecution is deemed to have knowledge of *Brady* material even if it did not actually know about it, but those are not relevant here. A prosecutor's *Brady* and discovery obligations extend beyond the information of which he or she is personally aware such that "the individual prosecutor has a duty to learn of any favorable evidence known to the others *acting on the government's behalf in the case*." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (emphasis added).

The relevant question, then, is who acts "on the government's behalf" in a federal case such as this one? The Ninth Circuit's answer to that question is clear: "The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any *federal* agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989) (emphasis

1  added); *see also United States v. Ross*, 372 F.3d 1097, 1111 (9th Cir. 2004) (same).

2  In *Bryan*, the defendant challenged the scope of a Court's Rule 16/*Brady* discovery

3  order, and specifically the limitation on information within the relevant district.  *See id.*

4  The Ninth Circuit rejected such a limitation on geographic scope, but recognized the

5  inherent limitation on sovereignty—the scope of a federal prosecutor's constructive

6  possession is limited to agents of the federal government.  *See id.*  The authors of the

7  majority opinion in *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007), specifically

8  recognized this principle in their concurrence to the denial of en banc review of that case.

9  *See United States v. Fort*, 478 F.3d 1099 (9th Cir. 1999) (Graber and Tallman, J.J.).  They

10  stated that while local police reports can become privileged once they are in the *actual*

11  possession of the federal government, "unlike *Bryan*, *Fort* establishes no principle of

12  constructive possession" and thus does not extend *Brady* obligations to all documents

13  within the custody and control of a state investigative agency.  *Id.* at 1100.

14  It is beyond dispute that the SFPD is not a federal agency.  Accordingly, the

15  United States has no *Brady* obligation for material that may exist in the custody of the San

16  Francisco Police Department but is not actually possessed by the prosecution in this case.

17  *See Bryan*, 868 F.2d at 1036.

18  Even if there could be situations where local police officers' criminal history or

19  department discipline records could be deemed to be "known" by the prosecution because

20  they worked particularly closely with federal agents in the investigation of a case, this is

21  not one of them.  As became clear during their testimony at trial, chemists at the SFPD

22  drug lab such as Ms. Madden had extremely limited involvement in the investigation

23  phase of crimes, much less with any federal investigative activity.  Instead, they would

24  receive drug evidence from the narcotics drop box, weight, test, and record the results,

25  enter them into the system, then repeat.  Internal quality control audits related to the

26  chemists' work at the lab was likewise far removed from active criminal investigation

27  into the crimes Cyrus committed.

28  Indeed, the only narcotic evidence Ms. Madden testified about testing at Cyrus's

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

trial were three exhibits related to codefendant Mister Meilleur and two related to witness Lacy Jackson, all of which were seized by *local* law enforcement officers and submitted to the SFPD narcotics drop box for testing.  In fact, the *most recent* narcotic exhibit Ms. Madden tested and testified about at trial was seized by SFPD officers from Mister Meilleur on August 9, 2002, *before* Cyrus had even committed any of the three murders of which he now stands convicted, and years before he was ever charged by the federal government.

Ms. Madden did also test a non-narcotic exhibit close to trial and testified about it: the weight of a plastic baggie that had previously contained narcotics seized from Cyrus on August 31, 2002.  This test was conducted because it became clear that the original narcotics test had been a gross weight including the baggie instead of a net weight without it.  Such involvement was minor, to say the least, and it would defy logic to conclude that weighing a single plastic baggie transformed a civilian chemist working for a local police department into a member of the federal government's prosecution team in a capital RICO trial.

At most, one could characterize the federal government's interactions with Ms. Madden and the SFPD drug lab as equivalent to employing the services of a private lab contractor.  The United States is unaware of any case suggesting that contracting work to a private drug or DNA lab somehow transforms that lab into an arm of the federal government and a de facto member of the prosecution team, such that the prosecution is deemed to have constructive knowledge of all potentially exculpatory information in the lab's possession.  Certainly the defendant has cited no such authority.  In any event, the baggie remains in evidence in the custody of the government and its weight is not in serious dispute given that the defense has never sought access to it nor requested that it be reweighed.

These facts conclusively demonstrate that Ms. Madden, a state civilian chemist employee, could in no way be deemed part of the prosecution team in this federal capital case such that knowledge of her misdemeanor convictions and internal employer

1  discipline was constructively known by the United States' prosecution team.  Likewise,

2  the contents of internal audit memoranda—which generally *approved* of the job done by

3  those chemists at that local lab while finding room for minor improvement—are not

4  documents that were known or constructively known by the United States prosecution

5  team.  Indeed, the defendant does not make any real effort to show otherwise, referencing

6  cases such as *United States ex rel Smith v. Fairman*, 769 F.2d 386 (7th Cir. 1985), which

7  stands for the unremarkable proposition that a local prosecutor is deemed to know about

8  *Brady* information in possession of a local police officer witness who performed firearms

9  analysis on the very firearm at issue in the trial.

10        Because the United States was not aware of, nor could it be deemed to be aware

11  of, Ms. Madden's misdemeanor domestic violence convictions, resulting employer

12  discipline, and internal lab audits conducted between 2006 and 2008, there has been no

13  *Brady* violation in this case.

14        *ii.  Even if the Prosecution Was Deemed to Have Knowledge of the Information, it
         Had No Duty to Disclose it Because it Was Not Material*

15

16        While undersigned counsel follow the practice of turning over any material of

17  which it is aware that is even arguably exculpatory, *Brady* and its progeny do not actually

18  require such overbroad disclosures.  In what the Supreme Court describes as a "critical

19  point" about *Brady*, "the prosecutor will not have violated his constitutional duty of

20  disclosure unless his omission is of sufficient significance to result in the denial of the

21  defendant's right to a fair trial."  *United States v. Agurs*, 427 U.S. 97, 108 (1976).  In

22  other words, *Brady* is only violated "if there is a reasonable probability that, had the

23  evidence been disclosed to the defense, the result of the proceeding would have been

24  different."  *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (quoting *United States v.*

25  *Bagley*, 473 U.S. 667, 682 (1985)).  The defendant has not even attempted to explain how

26  Ms. Madden's conviction, her resulting discipline, and the 2006–2008 internal audits

27  identifying room for improvement at the lab cast any doubt whatsoever on the jury's

28  verdicts in this case.

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

1    As noted above, Ms. Madden's role in this case was highly limited.  She testified

2    about five drug samples seized and examined between 1999–2002, none of which

3    involved any drugs even arguably possessed by Cyrus.  Instead, she tested two exhibits

4    obtained from Lacy Jackson, who personally confessed on the stand that they were in fact

5    narcotics, and three exhibits from Mister Meilleur, one of which he personally confessed

6    to being narcotics in his plea agreement.  Moreover, Ms. Madden performed her analysis

7    of these five samples years before sustaining her misdemeanor domestic violence

8    convictions.

9    As noted above, Ms. Madden did weigh a plastic baggie that had previously

10   contained narcotics seized from Cyrus in 2009 after sustaining her conviction.  But the

11   defendant has not questioned the validity of that portion of her testimony in any way.

12   And to reiterate, the plastic baggie remains in the custody of the government as evidence

13   in this case, and undersigned counsel have received no request to examine or reweigh the

14   baggie.  This strongly suggests that even the defendant does not believe that there is any

15   doubt about the weight of the baggie as testified by Ms. Madden at trial, much less

16   reasonable doubt about Cyrus's overall convictions as is necessary for a *Brady* violation.

17   Indeed, Ms. Madden's misdemeanor convictions and resulting discipline would

18   not even have been admissible at trial in the first place.  The admissibility of criminal

19   convictions is governed by Fed. R. Evid. 609.  The defendant concedes that Ms.

20   Madden's convictions are misdemeanor convictions and thus are governed under Rule

21   609(a)(2), which provides that "evidence that any witness has been convicted of a crime

22   shall be admitted regardless of the punishment if it readily can be determined that

23   establishing the elements of the crime required proof or admission of an act of dishonesty

24   or false statement by the witness."

25   Specifically, Ms. Madden was convicted of Cal. Penal Code §§ 273.5(a) and

26   594(b)(2)(A).  *See* Exhibit A (docket sheet of convictions).  The former is a

27   straightforward domestic violence crime prohibiting the willful infliction of even minor

28   corporal injury on, among others, a cohabitant.  The latter is a vandalism charge that

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

1   prohibits causing less than $400 worth of damage to any real or personal property owned

2   by another.  Clearly, neither of these crimes contains any element whatsoever involving

3   any acts of dishonesty or false statements.

4        In fact, Rule 609 was amended in 2006 to restrict its scope.  According to the

5   Amendment Notes, the elements of the crimes of convictions themselves *must* contain

6   dishonesty, and all convictions are "inadmissible under this subsection irrespective of

7   whether the witness exhibited dishonesty or made a false statement in the process of the

8   commission of the crime of conviction."  Ms. Madden's convictions do not even involve

9   that.

10       The defendant tries to get around the clear inadmissability of Ms. Madden's

11  convictions and the SFPD discipline imposed purely as a result of them by pointing to the

12  fact that Ms. Madden testified at her trial and suggesting that she did so falsely.  The

13  defendant has provided no authority for such a proposition.  Indeed, the defendant's rule

14  would produce highly anomalous results, implying that a person who pled guilty to Ms.

15  Madden's two crimes would suffer no future impeachment material, but someone who

16  simply exercised his or her constitutional right to a trial and to testify would.  The

17  defendant's testifying/non-testifying distinction should be rejected.  Rather, it is the

18  nature of the conviction that is relevant under Rule 609.

19       Even if the decision to testify could be taken into account, it is not at all clear that

20  Ms. Madden lied when she took the stand.  While the defendant has declined to provide

21  any portion of that testimony for the Court's and the United States' review, it is the

22  understanding of the government that Ms. Madden freely admitted at trial that she had,

23  indeed, thrown a phone at her partner during a dispute centered on the end of their

24  relationship, and that such action had caused her partner to bleed.  It is the further

25  understanding of the government that Ms. Madden testified to some form of self-defense

26  centered on her belief that her partner did lunge or was about to lunge at her causing her

27  to throw the phone.  The jury, then, could have believed everything Ms. Madden said and

28  convicted anyway by concluding that the force Ms. Madden responded with was not

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

1  reasonable.  In any event, the defendant's failure factually to develop this argument

2  cannot be held against the government.

3       Finally, even if Ms. Madden's convictions and discipline were somehow facially

4  admissible under Rules 609(a), 608(b), or some other Rule, the United States submits that

5  the information would clearly have been excluded under Fed. R. Evid. 403.  Rule 609(a)

6  explicitly invokes Rule 403's balancing test when judging admissibility, and the Ninth

7  Circuit has made clear that "Fed. R. Evid. 403 modifies ... rule [608(b)] by providing that

8  otherwise admissible and relevant evidence may be excluded if the court determines that

9  its probative value is substantially outweighed by the danger of unfair prejudice."  *United*

10 *States v. Geston*, 299 F.3d 1130, 1137 n.2 (9th Cir. 2002).

11      Ms. Madden's throwing of a phone at her partner during a domestic quarrel is so

12 far removed from anything remotely related to the subject of her testimony or her

13 credibility, and exploration by the defense of the content of her testimony in her defense

14 in that trial so likely to confuse or mislead the jury or unnecessarily delay the proceedings,

15 that it would clearly fail Rule 403's balancing test and be inadmissible.  Accordingly, that

16 information cannot qualify as material and thus cannot support a claimed *Brady* violation.

17      Similarly, the internal audits in this case are probative of nothing relevant.  The

18 United States has attached a representative audit from 2006 as Exhibit 2 for the Court's

19 review.[2]  The audit clearly states that any examples of strict non-compliance with ASCLD

20 standards it identifies "must not be taken as a reflection of the quality of the work

21 product."  Indeed, the audit specifically states that "the quality of the work product by the

22 staff was extremely high" despite the fact that the lab "is understaffed."  Only three

23 findings of non-compliance with ASCLD standards were found to exist:  (1) historical

24

25      [2] The government provided this audit and all other documents to the defense under seal
26 with a protective order as a precautionary matter because many of the documents related to
   personnel matters or were otherwise sensitive.  However, SFPD made no claim of privilege or
27 other restriction on the dissemination of this internal audit, nor does it appear to contain sensitive
   information of any kind.  Accordingly, it is filed as an exhibit to and discussed publicly in this
28 response.

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

11

1   changes to the lab's standard operating procedure were not properly documented; (2)

2   some prior recommendations had not yet been fully integrated into the standard operating

3   procedure; and (3) three reagents were not tested in March of 2006 as recommended,

4   though all three were properly tested in other months of the year.  The report also makes

5   note of some additional areas for improvement, such as better labeling and tracing of

6   certain materials, but none of these observations rose to the level of requiring corrective

7   action.  Within two months of the audit, Francis Woo, then the Narcotics Supervisor,

8   wrote a memo indicating that all corrective action recommended by the audit had been

9   taken.  *See* Exhibit 3.

10          It can hardly be expected in a human system that literally every rule and procedure

11   will be perfectly applied every single time.  There is always room for improvement.  For

12   the defense to suggest that there is some relevance to these proceding that, for example,

13   three reagents having nothing to do with any of the testing undertaken in this case weren't

14   tested for one month in 2006 is absurd.  Introduction of this internal audits, which

15   actually *praised* the work at the drug lab, would have been inadmissible hearsay,

16   cumulative, a waste of time, and a failure under Rule 403's balancing test.  Even if such

17   internal audits were admissible, they would in no way have cast any reasonable doubt on

18   the jury's verdict in this case, which is required before a *Brady* violation can be found.

19          Because the United States did not know about Ms. Madden's convictions, her

20   internal discipline, and the internal audits, and because the United States is not deemed to

21   know about this information, there was no *Brady* violation.  Even if the United States is

22   deemed to have knowledge of this information, there was still no *Brady* violation because

23   the information was inadmissible and immaterial.  In an abundance of caution and for the

24   record, the United States respectfully requests that, whatever the basis for a ruling on the

25   defendant's motion, the Court make a specific finding that it would not have admitted this

26   information at trial had the defense sought to introduce or reference it.

27

28

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

**B. The Defendant's Motion Squarely Qualifies as a Rule 33 Motion for a New Trial Based on Newly Discovered Evidence, Which Must Fail**

Where, as here, evidence preexisting the trial is discovered after trial and neither party knew about it nor was the prosecution deemed to know about it, relief can only be granted under Fed. R. Evid. 33 and the cases interpreting it. The defendant clearly fails to merit relief under Rule 33.

The Ninth Circuit has established a five-part test to determine whether a defendant can obtain a new trial based on newly discovered evidence:

> (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would *probably* produce an acquittal.

*United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985) (quoting *United States v. Krasny*, 607 F.2d 840, 845 (9th Cir. 1979), emphasis in original).

While the United States has no reason to doubt that the defense qualifies under the first prong and, like the prosecution, did not actually know about this information until after trial, the defendant fails every other prong of the Rule 33 test.

*i. The Defense Did Not Exercise Due Diligence*

First, the defense utterly failed to exercise due diligence to discover this information which was equally available to both sides. Ms. Madden's conviction is a matter of public record and thus is easily identifiable through any of a number of private and public databases or minimal investigation. Indeed, a free search for "Deborah Madden" of California at http://criminal-records.org/ returns a number of names of people with potential criminal histories including one "Deborah J Madden," age 60, of Belmont, California.

With respect to Ms. Madden's internal discipline that came as a result of her conviction, it is the understanding of the government that the fact that SFPD was looking into the conduct that ultimately resulted in Ms. Madden's convictions was actually

1   brought up at her trial.  Accordingly, any reasonable investigation into the convictions

2   would necessarily have revealed that SFPD was at least considering internal discipline.

3   And since the internal SFPD discipline was wholly based on Ms. Madden's convictions, it

4   would have been cumulative anyway.

5          The internal audits were just as easily obtainable by the defendant because, like the

6   government, he has subpoena power over witnesses and documents.  *See* Fed. R. Crim. P.

7   17.  The defense could have issued a subpoena for any documents they deemed relevant

8   from the SFPD crime lab, or at least requested one from the Court.  Apparently, they

9   failed to make any such request of the Court.  To support his motion, the defendant

10   highlights concerns about the SFPD crime lab arising from events in a completely

11   separate capital case and, and emphasizes that he sent various discovery letters to the

12   prosecution in this case seeking information about the SFPD crime lab.  This does not

13   support his motion; rather it undermines his claim of due diligence.  If the defendant

14   believed that relevant information existed at the SFPD crime lab, he should have sought a

15   subpoena rather than writing letters to the prosecution.  The failure even to attempt to do

16   so indicates a lack of diligence on the defendant's part that is fatal to his Rule 33 motion.

17   At the very least, the defendant has completely declined to allege facts demonstrating his

18   diligence in obtaining this information as required by the Ninth Circuit.  *See Steel*, 759

19   F.2d at 713.

20          *ii.  The Information Is Impeaching and Cumulative*

21          Even more fatal to his motion, the information is fundamentally impeaching and

22   cumulative in nature.  Obviously, Ms. Madden's conviction and discipline are only

23   remotely admissible on a theory of impeachment, and as the defendant concedes,

24   evidence that merely impeaches cannot generally support a new trial motion under Rule

25   33.  *See, e.g., United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991) (stating that

26   newly discovered "evidence that would merely impeach a witness cannot support a

27   motion for a new trial").  While the Ninth Circuit has been willing to allow a narrow

28   category of impeachment information to qualify for a new trial, such impeachment

1   evidence must be "so powerful that, if it were to be believed by the trier of fact, it could

2   render the witness' testimony totally incredible." *United States v. Davis*, 960 F.2d 820,

3   825 (9th Cir. 1992).  It is simply not reasonable to assert that knowledge of Ms. Madden's

4   misdemeanor convictions for throwing a phone at her partner would in any way

5   undermine her expert testimony about the identity and weight of narcotics and their

6   packaging, much less render it "totally incredible" as is required by the caselaw.  *See id.*

7   The internal SFPD drug lab audits, bearing no direct connection to any of the

8   actual narcotics introduced in this case, are likewise admissible only under a theory of

9   impeachment.  Because the audits found very minor and very little non-compliance with

10   ASCLD regulations, and because they often praise the work of the chemists at the lab,

11   they also fail to entitle the defendant to a new trial.  Moreover, the internal audits are

12   wholly cumulative given that the defendant vigorously cross-examined all of the

13   numerous testifying SFPD chemists about their standards, protocols, and general

14   competence of their work.

15         *iii.  The Information Is Not Material to the Issues Involved*

16   As discussed in the *Brady* section above, none of the newly discovered

17   information proffered by the defense is material to this case; indeed, none of it is even

18   admissible.  The defendant attempts to trump up the importance of the drug evidence to

19   the RICO enterprise found by the jury in Count Two and in the VICAR-related counts.

20   However, he fails to acknowledge that Page Street Mob was an enterprise involved in

21   both drug dealing *and* violence.  Because only two predicate acts of violence are

22   sufficient to qualify as a pattern of racketeering activity, and because the jury found that

23   Cyrus himself committed multiple acts of violence with firearms that moved in interstate

24   commerce, the RICO enterprise convictions can stand even without reference to drugs.

25   Accordingly, the newly discovered evidence relied upon by the defendant cannot support

26   his motion for a new trial.

27         *iv.  The Information Would Not Probably Result in an Acquittal*

28   The fifth and final prong of the Ninth Circuit's standard for granting a new trial

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

1   under Rule 33 is utterly out of reach of the defendant.  Eliciting the proffered additional

2   and cumulative impeachment of drug chemists such as Ms. Madden who were already

3   vigorously cross-examined by the defense would not influence the verdicts in a new trial

4   in this triple-homicide capital RICO case in the least, much less "*probably* produce an

5   acquittal."  *Steel*, 759 F.2d at 713 (quoting *Krasny*, 607 F.2d at 845, emphasis in original).

6       For the foregoing reasons, the defendant's motion for a new trial based on newly

7   discovered evidence in existence prior to and during trial must fail.

8

9   **II.  Information Post-Dating Trial in This Case Cannot Support a New Trial**

10      The second category of information relied upon by the defendant in support of his

11   motion for a new trial relates to the so-called SFPD crime lab scandal, which became

12   public in early 2010 when it was revealed that Ms. Madden had admitted taking some

13   quantities of powder cocaine from evidence at the lab in late 2009.  As is now well

14   known, the lab was eventually shut down in the wake of these revelations.

15      As serious as those problems at the SFPD crime lab may have been, they simply

16   bear no relevance to this case.  The defendant was tried, convicted, and sentenced by the

17   jury on the capital counts before any of those events occurred.  The defendant has failed

18   to meet his burden of demonstrating that any of Ms. Madden's issues stretched back as far

19   as July 2009, when trial in this matter—both guilt and penalty phases—had fully

20   concluded.  Put simply, there is no evidence whatsoever that Ms. Madden's misconduct at

21   the lab occurred during the commission of Cyrus's crimes, during the investigation and

22   charging of them, during his trial, or during the jury's final determination of his

23   punishment.  The lab scandal is, fundamentally, irrelevant to this case and cannot qualify

24   as "newly discovered evidence."  It never could have been introduced as evidence at trial

25   in the first place because it had not occurred and did not exist.

26      The United States has thus far been unable to find a published decision where a

27   defendant even attempted to obtain a new trial based on events wholly occurring after

28   trial was complete.  The defendant's theory that post-hoc events can warrant a new trial

1  would produce extraordinarily sweeping changes to our legal system and manifestly

2  undermine the strong interest in finality of criminal convictions. *See, e.g., McCleskey v.*

3  *Zant*, 499 U.S. 467, 491 (1991) ("One of the law's very objects is the finality of its

4  judgments.  Neither innocence nor just punishment can be vindicated until the final

5  judgment is known.  Without finality, the criminal law is deprived of much of its deterrent

6  effect. (internal quotation marks omitted)).

7          Under the defendant's theory, for example, if an eyewitness to a murder pleads

8  guilty to a felony he or she committed two years *after* testifying at the murder trial, that

9  would apparently be a valid basis for a new trial motion. *See* Fed. R. Crim. P. 33(b)(1)

10  (allowing motions for new trials based on newly discovered evidence for up to three years

11  after verdict).  Similarly, if narcotic evidence introduced at trial were subsequently

12  accidentally destroyed or altered, the defendant's theory would allow a new trial based on

13  "newly discovered evidence" of tampering with relevant evidence.  The defendant's

14  theory simply defies logic.

15          Even if the SFPD lab scandal that occurred after trial concluded could nonetheless

16  facially form a proper basis for a new trial motion, the motion would still have to be

17  denied under the fourth prong of the Rule 33 test, which requires the newly discovered

18  information to be "material to the issues involved." *Steel*, 759 F.2d at 713 (quoting

19  *Krasny*, 607 F.2d at 845).  The SFPD lab scandal and post-trial audits cannot possibly be

20  material to the issues involved in Cyrus's trial because they weren't even in *existence*

21  until after Cyrus was tried, convicted, and sentenced on the capital counts.

22          For the foregoing reasons, evidence proffered by the defendant that occurred or

23  was created after trial was complete cannot support his motion for a new trial.

24

25  **III.  Even If Ms. Madden's Testimony Were Deemed Totally Incredible, No Count of**

26  **Conviction Would Be Undermined**

27          The defendant attempts to create a sum that is larger than its parts by stitching

28  together Ms. Madden's pre-trial misdemeanor conviction with her post-trial lab

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

1    misconduct to support his motion for a new trial.  This is improper, as they are two

2    separate incidents, only the former of which even qualifies as newly discovered evidence.

3    Yet even if the Court were to entertain the idea, and even if the Court found that the

4    information proffered by the defense "render[s Ms. Madden's] testimony totally

5    incredible," *Davis*, 960 F.2d at 825, not a single count of conviction would be put in

6    jeopardy.  This is because "even if the [newly discovered] impeachment evidence

7    completely destroy[s a witness's] testimony" a verdict can still be upheld when "there

8    remains sufficient evidence to support all of the" counts of conviction.  *Id.* at 827.  That is

9    the case here.

10          As noted above, Ms. Madden testified about five narcotic tests she performed,

11   three involving Mister Meilleur and two involving Lacy Jackson.  Lacy Jackson admitted

12   at trial that both exhibits about which Debbie Madden testified involving him were, in

13   fact, crack cocaine in open court.  Moreover, cooperating witnesses Lacy Jackson and

14   Donald Armour identified Meilleur as a Page Street Mob member involved in crack

15   cocaine distribution.  Numerous chemists identified drug exhibit after drug exhibit seized

16   from Page Street Mob members as being crack cocaine in the quantities alleged by the

17   United States.  Accordingly, more than sufficient evidence remains to convict Cyrus of

18   the drug conspiracy and RICO enterprise-related counts of conviction even if Madden's

19   testimony were totally ignored.

20          There remains, then, Ms. Madden's testimony about her weighing of the plastic

21   baggie that had formerly contained drugs seized from Cyrus that formed the basis for

22   Counts 11 and 12.  Sufficient evidence supported that the net weight of the drugs

23   exceeded 5 grams even without the actual weight of the baggie:  testimony introduced at

24   trial established that the weight of the baggie was negligible, which was consistent with

25   the visual appearance of the baggie as introduced at trial into evidence.

26          Even if Ms. Madden's testimony about the weight of the baggie were necessary to

27   establish the net weight of the drugs, and she was deemed to be completely incredible on

28

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC

that testimony, no count of conviction would be in jeopardy.[3]  That is because the Ninth Circuit has squarely held that "drug type and quantity are not elements of [a narcotics] offense, but rather are material facts that must be submitted to the jury and proved beyond a reasonable doubt."  *United States v. Thomas*, 355 F.3d 1191, 1195 (9th Cir. 2004).  Because Ms. Madden's testimony about the baggie related *solely* to the quantity of drugs possessed by Cyrus in Counts 11 and 12, her testimony provided no relevant evidence on the elements of those crimes.  Rather, her testimony was only relevant to the potential mandatory minimum sentences Cyrus might receive on those counts.  Even without Ms. Madden's testimony, then, more than sufficient evidence was presented at trial to support each and every element of Cyrus's narcotic convictions in Counts 11 and 12.

For the foregoing reasons, even if Ms. Madden's entire testimony were disregarded, sufficient evidence supported each and every count of which Cyrus stands convicted and his motion for a new trial must fail.

## CONCLUSION

For the reasons stated herein, the government respectfully submits that the Court should deny defendant's motion for a new trial.

Date:  October 27, 2010                   Respectfully submitted,

                                          BRIAN J. STRETCH
                                          Acting United States Attorney

                          By:  _____/s/_____
                                          WILLIAM FRENTZEN
                                          ROBERT DAVID REES
                                          Assistant United States Attorneys

---

[3] This is an unsupportable hypothesis given that the defendant easily could reweigh the baggie, which remains in evidence, if he so chose.

U.S. Opp. to Mot. for New Trial, CR-05-0324 MMC