JAMES S. THOMSON
Attorney and Counselor at Law
California SBN 79658
819 Delaware Street
Berkeley, CA 94710
(510) 525-9123
james@ycbtal.net

JOHN T. PHILIPSBORN, ESQ. - SBN 83944
Law Offices of JOHN T. PHILIPSBORN
507 Polk Street, Suite 350
San Francisco, CA 94102
(415) 771-3801
jphilipsbo@aol.com

Attorneys for Defendant DENNIS CYRUS, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br>vs.<br>RAYMON HILL, et al.,<br>　　　Defendants. | Case No. CR-05-00324-MMC<br><br>**SENTENCING MEMORANDUM**<br><br>Date:　November 19, 2010<br>Time: 1:30 PM<br><br>Dept:　Hon. Maxine M. Chesney |

### I.    INTRODUCTION.

Dennis Cyrus Jr. presents the following information for this Court to consider in imposing the sentence in this matter. Before submitting this memorandum, the defense met with the probation officer on several occasions, and communicated the defense concerns via informal

and formal objections.[1] On the whole, the defense agrees with the information and opinions set forth in the Final Presentence Report, and raises no objections in that regard.[2]

However, the defense raises "legal issues related to an issue regarding witness Delwan Blazer, the problems associated with the San Francisco Police Department Crime Laboratory, and statements by Constance Merritt." Addendum to the Presentence Report, at 2, pargraph 9. The probation officer observed that "[t]hese issues were not addressed in the Presentence Report and are more suitable for the defendant's Sentencing Memorandum." Id at 10. Accordingly, these issues, and the issues of acceptance of responsibility and the imposition of a life sentence are addressed in this memorandum.

## II. SENTENCING ISSUES.

### A. Delwan Blazer

Prior to the final presentence report, the defense observed that the government had advised defense counsel that an issue may have arisen as to one of it's witnesses, Delwan Blazer. The defense was concerned that this matter would affect Count 2, Racketeering Act 11, and VICAR Count 7, the Randy Mitchell murder. While it may prove to be an appellate or postconviction issue, the defense does not feel that it presents a sentencing issue at this time.

### B. San Francisco Crime Lab

As to Count 11, the defense objects to the weight of the crack cocaine (5.88 grams) seized from Dennis on August 31, 2002 due to the disclosure of problems in the San Francisco Police Department Crime Laboratory. The problems relate to the taking of drug samples by a former technician and other laboratory failings. That issue is presently being litigated before the Court.

---

[1] On September 6, 2010, the defense submitted informal objections to the proposed presentence investigation report. On September 14, 2010, the defense submitted comments concerning the government's response to the presentence report. On September 15, 2010, the defense supplemented its informal objections. On November 3, 2010, the defense addressed questions concerning acceptance of responsibility issues. On November 8, 2010, the defense supplemented the acceptance of responsibility submission.

[2] The defense suggests the following minor changes: Insert "Hill" after "Ramon" on page 9, paragraph 37, line 2; bold "Cyrus" on page 12, paragraph 47, line 10; insert "it" after "taking" on page 24, paragraph 130, line 4; and add "d" after "sentence" on page 32, paragraph 189, line 4.

On October 8, 2010, defendant filed a motion for new trial. (Doc #1638). The government filed its opposition on October 27, 2010. (Doc #1643) The reply to the opposition was filed on October 31, 2010. (Doc #1645). The hearing on the motion is set for November 19, 2010. Depending on the outcome of that motion, the Court may need to make a sentencing adjustment as to the affected counts.

### C.   Constance Merritt

Prior to the preparation of the presentence report, Constance Merritt was in contact with John Philipsborn, counsel for Mr. Cyrus. Ms. Merritt was introduced to Mr. Philipsborn by Patricia Harris, Dennis' mother. Ms. Merritt explained that while the death of her son was extremely painful to her, she was aware that Patricia had lost a son as well - and she indicated that she did not support the pursuit of death for Dennis. Ms. Merritt told Mr. Philipsborn that she was concerned about being asked to support the government's case for death. Ms. Merritt acknowledged prior drug usage and other problems, for which she said she is being treated. She expressed no concern about her role as a witness, and professed concern about Patricia's welfare. At no time, did Ms. Merritt, who was also contacted by telephone prior to the just described meeting, indicate a concern about threats, nor did she indicate that any threats to her were connected to Dennis, or anyone connected to him.   This information is inconsistent with the information Ms. Merritt provided in her writings to the court.

### D.   Acceptance of Responsibility.

In straightforward terms: "Acceptance of responsibility entails more than merely mouthing the vocabulary of contrition. Pleading guilty in advance of trial and truthfully disclosing the details of all relevant conduct usually will constitute substantial evidence that a defendant has accepted responsibility. See USSG § 3E1.1, cmt. (n.3)." *U.S. v. Deppe*, 509 F.3d 54, 61 (1st Cir. 2007). As the Court in *Deppe* made clear, it is only "[w]hen a defendant proceeds to trial and puts the government to its proof, a credit for acceptance of responsibility normally will not be available." *United States v. Sánchez-Berríos*, 424 F.3d 65, 79 (1st Cir. 2005); see also *United States v. Rosario-Peralta*, 199 F.3d 552, 570 (1st Cir. 1999). Even so,

proceeding to trial does no more than create a rebuttable presumption of non-availability.[3]

Here, however, the fact that there was a trial, and that there will be an appeal in this case, is not Dennis' doing. He agreed to plead guilty to all counts and admit all relevant conduct well before trial. Dennis offered to plead to a 48 year sentence, to a 56 year sentence and then to a sentence of life without release - pleading guilty to all counts, not contesting his factual guilt, admitting relevant conduct, and waiving his right to appeal and to forego any available post-conviction remedies. Dennis should not be further punished because the government forced him to go to trial.

**The First Offer**

On June 2, 2008, Dennis offered to plead to the charges in exchange for a prison sentence of forty-eight (48) years. (June 2008 Offer at 1). A copy of the letter is attached as Attachment A. The defense noted that the "hope is that the Government will accept [the] offer, made at a time when it would be possible to avoid a lengthy, and costly, trial." (June 2008 Offer at 1).

**That offer was rejected by the government.**

**The Second Offer**

On February 16, 2009, Dennis offered to plead guilty in exchange for a fifty-six (56) year sentence. Dennis submitted a detailed Rule 11 report to the government setting forth his offer. A copy of the report is attached as Attachment B.

Dennis made his intentions clear:

> For his crimes, Dennis Cyrus, Jr. has proposed a sentence of 672 months, which would allow his release, conditioned upon no institutional violations, at age 72, some 5 years beyond his statistical life expectancy. He would serve 48.75 years and not be eligible for any early release programs administered by the Bureau of Prisons.

February 16, 2009 Rule 11 Report at 12. Dennis noted that his "proposal of a sentence far exceeds

---

[3] A defendant may still receive credit for acceptance of responsibility in "rare situations." USSG § 3E1.1, cmt. (n.2); *see e.g., United States v. Kowal*, 2007 WL 2903194, at *9 (N.D.Iowa 2007) [No. 06-CR-133] (allowing downward adjustment where defendant stipulated to facts and proceeded to trial solely to test applicability of statute to his conduct)." *Id*. at 61.

Sentencing Memorandum 4

1 sentences previously meted out for similar conduct," and that it exceeded "by almost 200 months
2 the sentence recently handed down to Edgar Diaz, a participant in the "Down Below Gang" and
3 identified as participating in three gang related murders and four attempted murders." *Id*.

**That offer was rejected by the government.**

**The Third Offer**

On February 25, 2009, Dennis offered to plead guilty in exchange for a life without release sentence. February 25, 2009 Life Offer Letter at 1. A copy of the life offer letter is attached as Attachment C. Dennis made it clear that "in addition to accepting life imprisonment without possibility of parole", he was prepared to "waive his right to appeal any aspect of this case, including any of the rulings already made which may be subject to appeal, and he is willing to give up his right to collateral review of his convictions and sentence." *Id.*

**That offer was rejected by the government.**

Each offer met the criteria for acceptance of responsibility independently, and certainly the cumulative nature of these offers show that an acceptance of responsibility reduction should apply.

In *United States v Cantrell*, the Court of Appeals addressed a variety of issues involving a number of co-defendants.[4] One defendant, Jack Coversup, sought an acceptance of responsibility reduction at sentencing, and when his request was denied, he sought relief on appeal. The sentencing court denied the acceptance of responsibility adjustment because "(1) Coversup had gone to trial, not just to preserve his constitutional suppression claim, but also to deny factual guilt; and (2) Coversup had not truthfully admitted the conduct comprising the offense of conviction." *Cantrell*, 433 F.3d at 1284.

---

[4] In this case, the United States Sentencing Commission directed the probation officer to consider, in assessing the acceptance of responsibility reduction, the *United States v Cantrell*, 433 F.3d 1269 (9th Cir. 2006) case. On October 29, 2010, the probation officer asked the parties to address the issues raised in the *Cantrell* case. On November 3, 2010, the defense timely filed its response. See FN1.

Sentencing Memorandum 5

The Court of Appeals held "that the first ground cited by the district court was erroneous, but affirm[ed] its denial of the adjustment on the second ground." *Id*. In overruling the district court as to the first point, the Court noted:

> We confronted this same issue in *United States v. McKinney*, another case where 'the district court appeared to assume, that a defendant who goes to trial can only receive the reduction if the trial is limited to issues unrelated to factual guilt.' 15 F.3d 849, 853 (9th Cir.1994). There we explained that the second application note 'itself makes clear that the example [of a defendant going to trial to assert [an] issue unrelated to factual guilt] was not intended to be exhaustive,' and held that '*in appropriate circumstances the reduction is also available in cases in which the defendant manifests genuine contrition for his acts but nonetheless contests his factual guilt at trial*.'

*United States v. Cantrell*, 433 F.3d at 1285 (emphasis added). Thus, when a defendant manifests genuine contrition, he may still go to trial and receive the acceptance of responsibility reduction because that "would best serve the 'primary goal of the reduction [which] is to reward defendants who are genuinely contrite.'" *Cantrell*, 433 F.3d at 1285.

As to the second point, the Court found that defendant "Coversup does not qualify for the adjustment because he has not otherwise met his burden of showing that he accepted responsibility for his crime." *United States v. Cantrell*, 433 F.3d at 1285. The Court, citing the third application note for § 3E1.1, held that "entry of a guilty plea prior to trial, combined with truthful admission of the conduct comprising the offense of conviction and additional relevant conduct, **constitutes 'significant evidence' of contrition**." U.S.S.G. § 3E1.1, cmt. n.3; emphasis added. In contrast, the Court held that "a defendant's choice to go to trial deprives the defendant of this 'significant evidence." *United States v. Ochoa-Gaytan*, 265 F.3d 837, 843 (9th Cir.2001)." Id.

However, the Court made clear that "[e]ven without the 'significant evidence' of a guilty plea, a defendant who chooses to go to trial may still exhibit sufficient contrition to merit an adjustment under § 3E1.1." Id, citing *Ochoa-Gaytan,* 265 F.3d at 843. The Court observed: "Subsection (a) of the first application note for § 3E1.1 provides that it is 'appropriate' for the district court to consider whether the defendant has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)."

Sentencing Memorandum 6

1   U.S.S.G. § 3E1.1, cmt. n.1(a)." *United States v. Cantrell*, 433 F.3d at 1285.[5]

2   In sum, the *Cantrell* opinion makes two points. First, when a defendant pleads guilty and admits all relevant conduct, he has shown significant evidence of contrition, and, he thus, qualifies for the reduction. Second, if a defendant chooses to go to trial to preserve any issues, he may still show sufficient contrition to warrant a reduction. While neither of those points fit the facts of this case precisely, nevertheless, *Cantrell* shows that the acceptance of responsibility reduction should be given in this case.

   In *Cantrell*, and each of the cases that it relies upon, while the defendant wanted to plead guilty, he wanted to go to trial to preserve issues for appeal. Not here. Dennis wanted to plead guilty, and waive his appeal and post-conviction rights. He did not want to go to trial. The government wanted a trial, and as a result, the government walked into an appeal, and post-conviction litigation, and, who knows, maybe into a new trial one day. The government got what it wanted, but that does not change the fact that Dennis offered to plead guilty three times, each time fully meeting the requirements of U.S.S.G. § 3E1.1. He wanted to plead so that no one had to go to trial. He would have pled to all counts and admitted all relevant conduct. As a result, the key component of the acceptance factor - <u>not</u> demanding trial - was met by Dennis.

   Under *Cantrell*, Dennis does not have to show any contrition beyond his agreement to plead guilty and admit all relevant conduct, and that he did three times. The Court in *Cantrell* observed: "Under the third application note for § 3E1.1, entry of a guilty plea prior to trial, combined with truthful admission of the conduct comprising the offense of conviction and additional relevant conduct, constitutes 'significant evidence' of contrition. U.S.S.G. § 3E1.1, cmt. n.3." *Cantrell*, 433 F.3d at 1285. While "a defendant's choice to go to trial deprives the defendant of this 'significant evidence,'" here, **it was the government's choice**, not the defendant's, to go to trial. *United States v. Ochoa-Gaytan*, 265 F.3d at 843.

---

[5] In *Cantrell,* the district court "found that Coversup had not met this criteria." *United States v. Cantrell*, 433 F.3d at 1285-1286. The Court found that Coversup did not object to that finding or argue that there were other relevant factors weighing in favor of acceptance of responsibility either before the district court or in his briefing on appeal." Id. at 1286. Thus, the Court held that the reduction was not warranted in his case.

Sentencing Memorandum                                                                                              7

In sum, Dennis did express contrition with the extensions of each of his offers to plead guilty. Moreover, Dennis expressed his contrition, remorse and sorrow to counsel and sentencing consultant, Dayle Carlson, on a continuing basis prior to, and throughout, the trial. Thus, *Cantrell* supports the acceptance of responsibility reduction for Dennis.

Accordingly, Dennis meets the criteria for an acceptance of responsibility reduction. He made a concerted effort to settle his case prior to trial. His efforts, constitute acceptance of responsibility, as it is delineated in USSG 3E1.1.[6] Dennis' efforts to settle this case were substantial. Very early on, he made attempts to discuss settlement, and he made three formal offers to settle, including up to pleading guilty to a "life without release" sentence. Thus, he fully accepted responsibility for his actions by agreeing to plead to all counts and admit all relevant conduct. The government, for its own reasons, and not related to Dennis' willingness to plead guilty, rejected the offers to settle. And, as a result of those rejections, the government forced

---

[6] USSG 3E1.1, comment. (n. 2) offers some guidance when considering whether a defendant should be given an acceptance of responsibility reduction after going to trial. Of course, the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." USSG 3E1.1, comment. n. 2. But demanding trial does not automatically preclude the adjustment. U.S.S.G. § 3E1.1 cmt. n.2. Importantly, the comment advises:

> Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.

*Id.* The comment continues to note:

> This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*Id.*. Thus, a defendant who has exercised the right to trial in order to assert and preserve legal or constitutional challenges may still receive the adjustment, depending on "pre-trial statements and conduct." U.S.S.G. § 3E1.1 cmt. n.2; *see e.g.*, *United States v. Gauvin,* 173 F.3d 798, 805-06 (10th Cir. 1999); *United v. Gamboa-Cardenas*, 508 F.3d 491, 506 (9th Cir. 2007); *United States v. Williams,* 344 F.3d 365, 380 (3d Cir. 2003), and *United States v. Wattree*, 431 F.3d 618, 622 (8th Cir. 2005).

Sentencing Memorandum     8

Dennis, the Court, the jury, and all associated to endure a six month trial at a huge expense of money, resources and human emotion.

Dennis did not demand to go to trial to contest issues to preserve his rights. He went to trial because the government demanded trial, refusing to accept his offers to settle the case. He had no choice but to go to trial. An examination of Dennis' "pre-trial statements and conduct", including offering to plead guilty to all of the charges against him, submitting a comprehensive report in support of that offer, submitting two more substantial offers to settle, clearly indicates an acceptance of responsibility as defined in USSG 3E1.1. He went to trial - not because of factual guilt questions or constitutional challenges - but because his more than reasonable offers to the government were rejected. Dennis' pre-trial statements and conduct, as directed by Application Note 2, clearly constitute an acceptance of responsibility worthy of the reduction.

Moreover, given the relevant dates of the crimes in this case, Dennis' sentence should be reduced by 3 levels for his acceptance of responsibility.

In a post 2003 case, defendants qualifying for the 2-level reduction may receive a third level reduction if the offense level is 16 or greater and the government moves for the third level, stating that the defendant has timely notified authorities of his intention to plead guilty. Current Guideline U.S.S.G. § 3E1.1 (Acceptance of Responsibility) reads as follows:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

With the PROTECT Act, Congress directly amended § 3E1.1 (b) to require a government motion stating that the defendant has assisted authorities by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently before the court

1  can grant the third point. *See* Pub. L. No. 108-21, tit. IV, § 401 (g) (Apr. 30, 2003); U.S.S.G.,
2  app. C, amend. No.649 (Apr. 30, 2003) (implementing Congress's direct action).
3        In this case, the granting of a third level does not require a government motion. Before
4  2003, no government motion was required for the court to reduce the third level.[7] The crimes in
5  this case occurred in 2002. The amendment requiring the government motion was enacted on
6  April 30, 2003, well after the dates of the offenses in this case. Thus, this amendment does not
7  apply here. *See U.S. v. Borer*, 412 F.3d 987, 991 (8th Cir 2005).
8        In *Borer*, the defendant argued that "retrospective application of the new motion
9  requirement would violate the Ex Post Facto Clause of the Constitution, and that the guidelines
10 in effect at the time of his offense should be applicable. See USSG § 1B1.11(b)." *Borer,* 412
11 F.3d at 990. The Court remarked: "We think it evident that the government's position is
12 inconsistent with the Ex Post Facto Clause." *Id.* at 991. The Court found that the statute was
13 "retrospective and more onerous than the law in effect on the date of the offense" because the
14 amended guideline "would result in a substantial disadvantage to Borer because he would receive
15 a longer sentence for the same conduct simply because he did not receive a motion [for a three
16 level reduction] from the government." *Id.* at 991 (*citing Weaver v. Graham*, 450 U.S. 24, 30-31
17 (1981)). In ruling, the Court held that the "version of § 3E1.1(b) in effect at the time of Borer's
18 offense should be applied, and that Borer is entitled to an additional one-level reduction under §
19 3E1.1(b)(2)." *Id*. at 991.
20       Accordingly, Dennis willingness to enter a guilty plea on more than one occasion before
21 trial warrants a three-level reduction. Dennis accepted responsibility for his involvement in these
22 crimes in making three serious offers to settle the case before trial, each time demonstrating his

---

[7] In those circumstances, as with substantial assistance motions under U.S.S.G. § 5K1.1, the prosecutor's exercise of discretion cannot be based on unconstitutional reasons or bad faith. *See, e.g., United States v. Chase*, 466 F.3d 310, 315 (4th Cir. 2006); *United States v. Slolely,* 464 F.3d 355, 360-61 (2d Cir. 2006). One district court has held that the government may not refuse to file a motion for the third point simply because the defendant filed a motion to suppress, citing pre-PROTECT Act cases. *See United States v. Gordon,* 2007 WL 4557836 (D. Colo. Dec. 19, 2007) (finding "that the government's refusal to file a motion for the third point in this case is animated by an unconstitutional motive and not rationally related to a legitimate government end").

contrition. Thus, the 3 level reduction should be applied.

### E. Life v. Life Without Release Sentence.[8]

Some twenty years ago, the Nevada Supreme Court wrote: "Life without parole means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." *Naovarath v. State*, 105 Nev. 525, 526, 779 P. 2d 944 (1989). Professor Robert Johnson said that "a better name for this sentence [LWOP] might be 'Death by incarceration.'" *See* Robert Johnson & Sandra McGunigall-Smith, *Life Without Parole, America's Other Death Penalty: Notes on Life Under Sentence of Death by Incarceration*, 88 Prison J. 328, 328 (2008); Testimony of Robert Johnson at Public Hearing Before N.J. Death Penalty Study Comm'n, July 19, 2006. Professor William Berry observed:

> A sentence of life imprisonment without the possibility of parole is in many ways no more than a death sentence without an execution date. A life without parole sentence is more than a decision that an offender will spend the rest of his life in prison; it simultaneously forecloses the possibility of ever reviewing that determination. A life without parole sentence, then, *is a one-time judgment that the life of the offender is irredeemable*.

Berry, William W., More Different than Life, Less Different than Death (May 24, 2010). Ohio State Law Journal, Vol. 71, No. 6, 2010.

That judgment should **not** be made in this case.[9] Dennis is not irredeemable in any sense

---

[8] During the course of the trial proceedings, the Court and counsel discussed the question of whether the lawful sentence for VICAR murder and the various murder charges associated with the death of Ray Jimmerson included a life sentence with possibility of release notwithstanding the Court's ruling that the only two alternative punishments for capital murder in this case were death or life without possibility of release due to the phrasing of 18 U.S.C 3594 (e). The defense has addressed this legal issue in a separate motion. (Motion for the Court to Impose a Lawful Sentence for VICAR Murder (Doc #1636); Opposition to Motion (Doc #1642); and Reply to Opposition (Doc #1645). The motion is set to be heard on November 19, 2010.

[9] In a very recent article, author Paul Robinson observed that "it is no stretch to think that some hope of future life outside of prison, even a distant hope, can improve inmate behavior and corrections efforts. Correspondingly, taking away all hope – the hallmark of the LWOP sentence – can create difficult problems for prison administration that can affect not only the rehabilitation of the offender but also the safety and quality of life of other prisoners and correctional staff." Robinson, Paul H., ""Life Without Parole" Under Modern Theories of Punishment" (2010), Scholarship at Penn Law, Paper 342. As the author observes: "One of the prime motivations for the federal Sentencing Reform Act of 1984, which among other things abolished the United States Parole Commission, was an attempt to reestablish

now, nor will he be irredeemable in the future. Dennis was barely eighteen (18) at the time of the crimes. The probation officer captured the case, and Dennis, in the conclusion of her report.

> During the sentencing phase of the trial and the jury unanimously found that the defendant's unstable early childhood dysfunctional family resulted in his having a home life without structure and emotional and financial support, and that this tends to indicate that he should not be sentenced to death, as a mitigating factor.
>
> Further, eleven out of twelve jurors found that the defendant was raised in a community in which violence was common, and this tends to indicate that he should not be sentenced to death.
>
> Finally, ten of twelve jurors found that the defendant lacked adult and parental guidance and support throughout his developmental period, his childhood and teenage years, and that this tends to indicate that he should not be sentenced to death.

Final Presentence Report, at 32; para 189.

If Dennis had been raised by a functional family, with a structured home life and financial support, in a community in which violence was rare or non-existent, and if he had had adult and parental guidance and support throughout his developmental period, his childhood and teenage years, he would have turned out like his sisters, and not like his older brother. These very reasons point to why Dennis should be sentenced to life with the chance of release, not without hope.

The government made sure that - Raymon Hill, sentenced to 17 years; Aquil Peterson, sentenced to 22 years; Lester Hogan, sentenced to 12 years; Mister Meilluer, sentenced to 7 years; and Steve Wilson, sentenced to 11 years - would all have hope. Dennis should not be denied that same hope, given that he was taught and led by the likes of Lacy Jackson and Raymon Hill in this tragedy.

---

credibility with an emphasis on "truth in sentencing" that determinate sentences bring. See e.g., U.S. Sentencing Guidelines Manual ch. 1, pt. A, introductory cmt. (2009)." *Id.* at 11. Robinson noted that "the Sentencing Commission stated that 'Congress first sought honesty in sentencing . . . to avoid the confusion and implicit deception arising out of the then-extant indeterminate sentencing system.'" *Id.* Thus, "offenders serve only 85 percent of the sentence imposed, under the reasoning that the potential for a 15 percent discount for good behavior gave correctional officials the ability to create a more productive and safer prison environment." *Id.* at 28.

12

### III. CONCLUSION.

\* \* \*

> As presently conceived and practiced, life without parole—more and more the punishment against which all else is measured—ultimately has no place in any criminal justice system worth its name.
>
> LWOP—an indistinct and disproportional collective response—not only fails as retribution for the most terrible crimes but also fails to act as a superior deterrent to life with parole.
>
> LWOP creates a binding commitment now and forever never to think differently, or feel different—when the future becomes the present and the present is now past.[10]

\* \* \*

The basis for this opinion rests on the idea that "imposing [life in prison without parole] begs the question of how can it serve human dignity to continue to cage a changed, nonthreatening, harmless person who seems genuinely to regret his mistakes." (Id. at 12-13). By imposing LWOP, the Court "reject[s] the problematic question "What good will it do?" and instead continues to focus on the bad that has been done." (Id. at 13).

The defense respectfully requests that the Court impose sentence in accordance with the matters addressed herein, and that in any event, the Court sentence Dennis to life with the possibility of release under federal law, and so as not to inflict cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

Dated: November 12, 2010     Respectfully Submitted,

JAMES S. THOMSON
JOHN T. PHILIPSBORN

/s/ James Thomson
_____
JAMES S. THOMSON
Attorney for Dennis Cyrus Jr.

---

[10] Carole D'Elia, "Less than We Might: Meditations on Life in Prison Without Parole" Federal Sentencing Reporter. Vol. 23, No. 1 (October 2010): Page 10.